225 P.3d 1177 (2010)
In the Interest of M.F., a Child Under the Age of 18 Years.
No. 100,845.
Supreme Court of Kansas.
February 5, 2010.
*1178 John W. Leighty, of Olathe, argued the cause and was on the briefs for appellant natural mother.
Steven J. Obermeier, assistant district attorney, argued the cause, and Stephen M. Howe, district attorney, was with him on the brief for appellee State of Kansas.
Dennis J. Stanchik, of Olathe, argued the cause and was on the briefs for appellee guardian ad litem.
*1179 The opinion of the court was delivered by LUCKERT, J.:
The biological mother of M.F. appeals a decision to terminate her parental rights, arguing the district court failed to comply with the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et seq. (2006). The ICWA standard for termination of parental rights is "evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f) (2006). The mother argues the State failed to present an ICWA qualified expert witness in either the child in need of care (CINC) proceeding or in the subsequent hearing to terminate parental rights. The Court of Appeals agreed with her argument and reversed the district court. In re M.F., 41 Kan.App.2d 927, 206 P.3d 57 (2009).
On review of that decision, we affirm the Court of Appeals, concluding that the ICWA heightens the requirements for an expert's qualifications beyond those normally required in a proceeding governed solely by state statutes. We further hold that Kansas district courts should consider the legislative history of the ICWA and the Department of the Interior, Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584 (1979), in determining if a witness meets the heightened standard. In this case, there was no evidence that the two social workers who testified were members of the child's tribe, had substantial experience in the delivery of child and family services to Indians, had extensive knowledge of prevailing social and cultural standards and childrearing practices within the child's tribe, or had substantial education and experience in the area of social work. Thus, the witnesses were not qualified expert witnesses under the ICWA, and there was no expert testimony to support the district court's decision as required by the ICWA. Because this error is not harmless, we reverse and remand for new proceedings.

FACTUAL AND PROCEDURAL BACKGROUND
M.F. was born on October 24, 2006, with special medical needs that required an extended hospitalization. His mother, S.F., was discharged after his birth; she then had no further contact with the hospital. Two weeks after M.F.'s birth, the State filed a CINC proceeding. The district court appointed a guardian ad litem (GAL) for M.F. and held a custody hearing the next day. M.F.'s alleged father, D.J., appeared at the hearing; his mother, S.F., did not. At the hearing, the State requested temporary custody of M.F. because of the mother's homelessness, her possible drug use, and her abandonment of M.F. at the hospital. Regarding D.J.'s ability to provide care, the State argued that paternity was unknown and that D.J. was physically unable to care for M.F. because of his own disabilities. The district court ordered genetic testing, ordered that service be completed on the mother, and determined an emergency existed to place M.F. in the custody of the Kansas Department of Social and Rehabilitation Services with the authority to find suitable placement.
Subsequent genetic testing confirmed D.J. was M.F.'s father. D.J., however, informed the court in writing that he was unable to care for M.F. and he did not contest the claim that M.F. was a child in need of care.
After the initial hearing, the State learned that M.F. might be eligible to enroll as a member of the Northern Arapaho Tribe (Tribe). Consequently, the State notified the Tribe of the proceeding. In response, the Tribe sent the State a notice of the Tribe's intent to intervene in the case and requested notification of all hearings and other actions. The State filed the Tribe's notice with the district court. Included with the Tribe's notice was a document stating a Tribe enrollment technician had determined M.F. was not enrolled with the Tribe but would be eligible for enrollment.
After several continuances, the district court conducted a CINC hearing in July 2007. At the beginning of the hearing, the mother's attorney reminded the district court that the ICWA applied. The State agreed, but reported it was unaware of whether the *1180 Tribe had been notified of the hearing. The GAL argued the Tribe had nonetheless received proper notice but failed to timely intervene. The district court determined the hearing should proceed and that the ICWA would apply.
The only witness to testify at the CINC hearing was Lindsay Courtney, a licensed social worker who was M.F.'s case manager. Courtney testified she received her bachelor's degree in May 2006 and obtained her social work license in July 2006, approximately 3 months before M.F.'s birth in October. No other expert qualifications were offered. Courtney testified that M.F. had required surgery and had been hospitalized since May 10, 2007. M.F. continued to require specialized care because of a "trache" and feeding tubes. According to Courtney, once the mother had been discharged from the hospital, she had not called to check on M.F. and did not know M.F. had required surgery and lengthy hospitalization. Courtney indicated there was an element of danger and risk to M.F. by the mother's not responding to the hospital because a potential caregiver would need to learn how to care for M.F. after M.F. was released from the hospital.
The State argued the evidence complied with the ICWA's standard of proof and established that M.F. was in danger and needed immediate placement. The GAL agreed with the State and additionally argued there was good cause for departing from the ICWA's placement preferences because neither parent was capable of handling M.F. or providing for M.F.'s special needs, no extended family members had come forward, and there was nothing more than an indication the Tribe would intervene. The mother's attorney argued the district court should apply the ICWA standard requiring testimony by an ICWA qualified expert, and the social worker who testified was not a qualified expert. The mother's attorney pointed out that Courtney did not testify she had ever "dealt with any Indian issues" or issues involving "Indian children." In addition, the mother's attorney suggested that the Tribe should be contacted because it might have resources available to meet M.F.'s needs.
The district court found the State had met its burden and the social worker had "testified appropriately as an expert in this matter." Additionally, the district court found the evidence was clear and convincing beyond a reasonable doubt that M.F. was in danger and out-of-home placement was immediately necessary. Further, the court found that "returning the child to [the parents] is not in the child's best interest at this time based on the child's special medical circumstances." Finally, the court held there was "good cause" to depart from any Indian placement because neither parent could care for the child; no family had come forward; the Tribe, despite its indication that it desired to intervene, had not done so; and there were no other viable placement options presented. In conclusion, the district court found M.F. was a child in need of care pursuant to K.S.A. 38-1502(a)(2) (repealed January 1, 2007; now K.S.A.2008 Supp. 38-2202[d][2], with nearly identical language) and set the matter over for disposition.
In November 2007, the district court conducted a permanency hearing to review the permanency plan and concluded the plan should be modified. In the journal entry, the court found reintegration of the family was not a viable alternative because M.F. had been in State custody since birth, M.F. had a serious medical condition that had required him to be hospitalized for 6 months and would require further hospitalization, and there was a lack of effort by the parents.
Also in November 2007, the State filed a motion to terminate parental rights. At a pretrial hearing related to the motion, counsel for the mother expressed concern there was no journal entry recording the CINC determination and the district court had heard no qualified expert testimony, which was required for a CINC determination under the ICWA. In response, the district court reiterated that it had found in July 2007, from the bench, that M.F. was a child in need of care pursuant to Kansas statutes based on evidence that "was clear and convincing and beyond a reasonable doubt." The court nevertheless agreed that the CINC finding needed to be journalized and directed the State to do so. Apparently, the State did not *1181 comply with the order; no such journal entry is contained in the record on appeal.
The mother then filed a motion to transfer jurisdiction to the Tribal Court of the Northern Arapaho Tribe (tribal court) pursuant to 25 U.S.C. § 1911(b) (2006). In the GAL's written reply to the mother's motion, the GAL argued good cause existed under the ICWA not to transfer jurisdiction of the case because the motion was untimely and it would be inconvenient to transfer the case to Wyoming, the location of the tribal court. The district court held a hearing on the mother's motion to transfer and ultimately denied the motion.
The motion to terminate parental rights was heard in April 2008, when M.F. was approximately 18 months of age. The mother appeared in person. Before evidence was presented, the district court noted a representative from the Tribe had contacted the district court and requested to participate in the hearing by telephone. Counsel for each parent confirmed that they had talked to the Tribe representative who wanted to participate and they had advised her to contact the district court for arrangements. The district court denied the request, indicating that the Tribe's participation by telephone would be "unwieldy and would not work."
During counsels' arguments pertaining to the termination of parental rights, the mother's attorney again argued the district court had not complied with the ICWA in that, during the numerous proceedings, it had failed to make specific findings required under the federal act. The district court disagreed, focusing on whether notice was given to the Tribe and finding the State made "an adequate record [showing] there has been compliance with all notice provisions." Then, testimony was taken from social worker Lindsay Howes, who had been involved in M.F.'s case since M.F. was placed in State custody. Like Courtney, the social worker who testified at the CINC hearing, Howes testified that she had received a bachelor's degree in social welfare in May 2006 and was licensed in July 2006, just months before M.F.'s birth. Howes recited the case history and the limited contacts she had with the parents. In Howes' opinion, M.F. needed permanency through an adoptive home that could provide for M.F.'s medical care and needs. She did not believe the mother could meet M.F.'s needs, which required more than normal parenting due to M.F.'s extreme medical needs. From the time of M.F.'s birth to the termination hearing, his condition had required numerous hospitalizations and medical procedures, and he continued to require the trache and feeding tubes.
The mother testified at the termination hearing that she knew of two family members who were interested in caring for M.F. if the district court determined she could not regain custody of the child. No family members came forward, however. The mother acknowledged that she had only seen M.F. twice since her postpartum discharge from the hospital 18 months earlier. The district court ultimately entered an order terminating the parental rights of both parents.
Only the mother appealed.

COURT OF APPEALS' DECISION
The Court of Appeals first rejected the State's contention that the mother failed to preserve for appeal the issues concerning the district court's failure to comply with the ICWA. In addition, the Court of Appeals rejected the mother's claim of error relating to the decision to deny her request to transfer jurisdiction to the Tribal Court. In re M.F., 41 Kan.App.2d at 933, 206 P.3d 57. These issues were not raised in the petitions for review and, therefore, are not before this court. The State and GAL do raise several arguments in their petitions for review related to the Court of Appeals' determination that the district court failed to properly comply with substantive requirements of the ICWA. See In re M.F., 41 Kan.App.2d at 935, 206 P.3d 57.
With regard to the CINC proceedings, the Court of Appeals found it problematic that the district court failed to journalize its CINC findings. Because of this lack of journalized findings, the panel determined "there is no evidence of compliance with the ICWA standards in [the CINC] determination." In re M.F., 41 Kan.App.2d at 934, 206 P.3d 57. Additionally, the Court of Appeals concluded *1182 that although the record contained a memorandum decision of the termination of parental rights, the district court's determination was not supported by proper evidence because there was not a qualified expert witness. The Court of Appeals incorrectly identified the social worker testifying at both the CINC and termination hearings as the same individual. Regarding that individual, the Court of Appeals noted the social worker "did not testify she was a qualified expert in determining whether an Indian child will suffer damage by continuing to remain in the custody of his parents." In re M.F., 41 Kan.App.2d at 934, 206 P.3d 57. Further, the Court of Appeals stated: "[O]ur court has determined the ICWA requires a witness to be qualified as an expert and the witness testify that evidence existed to support the State's burden under the ICWA. [Citations omitted.] There was no such testimony in this case." In re M.F., 41 Kan.App.2d at 935, 206 P.3d 57.
The Court of Appeals concluded that the district court's failure to comply with the requirements of the ICWA required a reversal of the district court's termination of parental rights and a remand for proceedings meeting the ICWA's requirements.
We granted the petitions for review filed by the GAL for M.F. and the State.

THE ICWA
In Kansas, proceedings concerning any child who may be a child in need of care are governed by the Revised Kansas Code for Care of Children, K.S.A.2008 Supp. 38-2201 et seq., "except in those instances when the court knows or has reason to know that an Indian child is involved in the proceeding, in which case, the Indian child welfare act of 1978 [25 U.S.C. § 1901 et seq.] applies." K.S.A.2008 Supp. 38-2203(a).
There is no dispute that the ICWA applies to this case. M.F. is an Indian child within the meaning of the ICWA, see 25 U.S.C. § 1903(4) (2006) ("`Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."). Generally, tribal courts have exclusive jurisdiction over proceedings involving children residing on or domiciled within a reservation and concurrent jurisdiction with state courts over foster care or termination of parental rights proceedings involving children not domiciled on a reservation. See 25 U.S.C. § 1911(a); Kelly v. Kelly, 759 N.W.2d 721, 724 (N.D. 2009); In re A.P., 25 Kan.App.2d 268, 274, 961 P.2d 706 (1998). In this appeal, it is not disputed that the district court had concurrent jurisdiction. And, as previously noted, the issue of whether the case should have been transferred to the tribal court is not before us.
The ICWA is designed to:
"protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture...." (Emphasis added.) 25 U.S.C. § 1902 (2006).
Because the ICWA provisions are minimal standards, if a different federal law or a State's law "provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under" the ICWA, the higher standard must be applied. 25 U.S.C. § 1921 (2006).

QUALIFIED EXPERT
The minimum federal standard with regard to CINC-type proceedingsi.e., where an Indian child may be placed in foster careis stated in 25 U.S.C. § 1912(e), which mandates that there must be a "determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (Emphasis added.) Similarly, a decision to terminate parental rights must be supported by the "testimony of qualified expert witnesses," but the State has a higher burden of proof; it must prove *1183 "beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f).
At issue here is whether Courtney and Howes, social workers for M.F., were qualified experts under the ICWA and whether their testimony satisfied the standards for the ICWA in the CINC and termination proceedings. The GAL and State argue that the Court of Appeals erred by essentially holding that to be a qualified expert witness under the ICWA, the witness must be knowledgeable in tribal customs or child welfare specifically related to Indian children and must present testimony supporting the State's burden under the ICWA.

Standard of Review
The qualification of witnesses as experts is generally a discretionary decision for the district court. See State v. Moore, 287 Kan. 121, 135, 194 P.3d 18 (2008). But to properly exercise discretion, a district court must apply the correct legal standard, and the determination of that standard is a question of law subject to de novo review. See Moore, 287 Kan. at 135, 194 P.3d 18 ("`"A district court by definition abuses its discretion when it makes an error of law.... The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." `[Citations omitted.]"). In the context of this case, the legal standard is defined by the ICWA, which requires testimony from "qualified expert witnesses." 25 U.S.C. § 1912(e), (f).
In interpreting federal statutes, "`[o]ur task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.'" Negonsott v. Samuels, 507 U.S. 99, 104, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 [1982]); see State v. Phillips, 289 Kan. 28, 32, 210 P.3d 93 (2009). Where the language is ambiguous, however, rules of statutory construction are employed to determine legislative intent, and courts "look to the historical background of the enactment, the circumstances attending its passage, the purposes to be accomplished, and the effects the statute may have under the various constructions suggested." Phillips, 289 Kan. at 32, 210 P.3d 93.

Ambiguity
The ICWA does not define "qualified expert witnesses," leaving Congress' intent unclear. A United States House of Representatives Report prepared in conjunction with the ICWA states that the phrase "`qualified expert witnesses' is meant to apply to expertise beyond the normal social worker qualifications." H.R.Rep. No. 95-1386, 95th Cong., 2d Sess. 1978, at 12, reprinted in 1978 U.S.C.C.A.N. 7530, 7545. This statement indirectly instructs that the standard typically applied in Kansas CINC and termination proceedingsqualifying a social worker as an expert if he or she has a degree, is licensed, and has some contact with the CINC caseis contrary to Congress' intent.
Yet, the legislative history does not explain the qualifications that are necessary to meet the heightened standard. Guidance has been provided, however, by the Department of the Interior, Bureau of Indian Affairs, through guidelines published to assist state courts in applying the ICWA. Department of the Interior, Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584 (1979) (BIA Guidelines). Courts have routinely consulted these guidelines to discern the intent behind the "qualified expert witnesses" requirement in 25 U.S.C. § 1912. See, e.g., Marcia V. v. State, 201 P.3d 496, 504 (Alaska 2009); Rachelle S. v. Dept. of Economic Sec., 191 Ariz. 518, 520, 958 P.2d 459 (App.1998); In re S.M.H., 33 Kan.App.2d 424, 433-34, 103 P.3d 976, rev. denied 279 Kan. 1006 (2005); see also In re H.D., 11 Kan.App.2d 531, 535, 729 P.2d 1234 (1986) (referring to other portions of BIA Guidelines). This court has never considered this issue, but we join these other courts and consider the legislative history of the ICWA and the BIA Guidelines, 44 Fed.Reg. 67,584.
*1184 As related to the "qualified expert witnesses" requirement, the BIA Guidelines state:
"D.4. Qualified Expert Witnesses
"(a) Removal of an Indian child from his or her family must be based on competent testimony from one or more experts qualified to speak specifically to the issue of whether continued custody by the parents or Indian custodians is likely to result in serious physical or emotional damage to the child.
"(b) Persons with the following characteristics are most likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings:
(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.
(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.
(iii) A professional person having substantial education and experience in the area of his or her specialty." 44 Fed. Reg. 67,593.
The first two types of individuals characterized in the BIA Guidelines, subparts D.4 (b)(i) and (b)(ii), are individuals who possess knowledge of Indian customs and Indian childrearing practices. The Court of Appeals noted these provisions and concluded neither criterion was satisfied. Although the Court of Appeals did not recognize that the social workers testifying at the two hearings were different individuals, the ultimate conclusion that the criteria of subparts D.4 (b)(i) and (b)(ii) were not satisfied is correct; there was no evidence in this case that the two social workers, Courtney and Howes, could have been qualified under the first two subparts. Neither indicated that she was a member of M.F.'s tribe, had substantial experience with tribal family services, or had extensive knowledge of cultural standards and childrearing practices within M.F.'s tribe.
The GAL focuses on this conclusion by the Court of Appeals to argue that the Court of Appeals required all experts in proceedings controlled by the ICWA to have specialized knowledge of Indian culture and society. This argument ignores the fact that the Court of Appeals acknowledged the BIA Guidelines, subpart D.4 (b)(iii), which makes no mention of knowledge of Indian culture. In re M.F., 41 Kan.App.2d at 935, 206 P.3d 57. Granted, the Court of Appeals' discussion blends the two hearings and the two witnesses, but we do not read the decision as reaching the question of whether an expert must always have expertise in Indian social and cultural matters, and conclude this issue is not before us for decision. See Supreme Court Rule 8.03(g)(1) and (h)(3) (2009 Kan. Ct. R. Annot. 66).
The Court of Appeals' holding was merely that: "ICWA requires a witness be qualified as an expert and the witness testify that evidence existed to support the State's burden under the ICWA. 44 Fed.Reg. 67,593 (1979). See In re S.M.H., 33 Kan.App.2d at 434-35, 103 P.3d 976. There was no such testimony in this case." In re M.F., 41 Kan. App.2d at 935, 206 P.3d 57. The Court of Appeals' reliance on In re S.M.H. reveals that the court was focused on the witnesses' lack of special expertise or experience.
In In re S.M.H., a different Court of Appeals panel reversed an adjudication order for failure to apply the standards of proof set forth in the ICWA. As to testimony of "qualified expert witnesses" required by the ICWA, the In re S.M.H. court looked to the BIA Guidelines for guidance as to what constitutes expert testimony in a foster care placement proceeding. At issue was the testimony of a social worker who worked at the Wamego SRS office. No qualifications other than being a social worker employed by SRS were presented, and the Court of Appeals' panel concluded those qualifications did not meet the ICWA's qualified expert requirement. In re S.M.H., 33 Kan.App.2d at 434, 103 P.3d 976.
The Court of Appeals' reliance on the BIA Guidelines in In re S.M.H. limited the district court's discretion in this proceeding, *1185 meaning that to properly exercise discretion the district court should have considered the BIA Guidelines, including subpart D.4 (b)(iii). See Moore, 287 Kan. at 135, 194 P.3d 18. Moreover, the In re S.M.H. holding, which was adopted by the Court of Appeals in this case, is consistent with the conclusion of numerous courts in other jurisdictions that have applied the rule that a person is not a qualified expert witness under the ICWA if they do not have expertise beyond the "normal" social worker qualifications. Generally these courts glean guidance from the legislative history of the ICWA, which specifically states that the education and training should be beyond the normal social worker qualifications, and the BIA Guidelines' language, which suggests there must be substantial education and experience. See, e.g., In re Desiree F., 83 Cal.App.4th 460, 466, 99 Cal. Rptr.2d 688 (2000) (ICWA requires more than showing that social worker was assigned to the case); C.E.H. v. L.M.W., 837 S.W.2d 947, 955 (Mo.App.1992) (stating that phrase "qualified expert witness" is not defined by ICWA, but legislative history of ICWA reveals that phrase is meant to apply to expertise beyond normal social worker's qualifications); Matter of Adoption of H.M.O., 289 Mont. 509, 519, 962 P.2d 1191 (1998) (abuse of discretion found where record was silent as to qualifications beyond being a social worker); In re Interest of Shayla H., 17 Neb.App. 436, 449-50, 764 N.W.2d 119 (2009) (abuse of discretion found where social worker had bachelor's degree in human development, had been in position for approximately 11 years, had received regular training, and had worked with families with Native American heritage); In re Roberts, 46 Wash.App. 748, 756, 732 P.2d 528 (1987) (no abuse of discretion where witness had attended numerous workshops on Indian child welfare and was a committee member for two organizations involved in drafting ICWA); In re Vaughn R., 770 N.W.2d 795, 807 (Wis.App.2009) (social worker's specialized knowledge as result of bachelor's and master's degrees in criminal justice did not relate to required showing of likely serious damage to child from continued custody by parent, and experience in monitoring conditions imposed on parents for the return of their children did not suggest something beyond normal social work qualifications); cf. Sandy B. v. State, Dept. of Health., 216 P.3d 1180, 1191 (Alaska 2009) (expert had substantial education in his specialty of psychology and, thus, met the ICWA's heightened standard for qualification as an expert in a proceeding to terminate parental rights, where expert had earned master's and doctorate degrees in clinical psychology); In re Interest of Phoebe S. & Rebekah S., 11 Neb. App. 919, 927, 935, 664 N.W.2d 470 (2003) (social work professor qualified to testify as expert witness under ICWA where professor had substantial education and experience in area of child welfare, bonding, and attachment and in sociological aspects of childhood, and was experienced and knowledgeable about ICWA); but see In re N.N.E., 752 N.W.2d 1, 13 (Iowa 2008) (citing Iowa statute which includes within the definition of "qualified expert witness" a "social worker, sociologist, physician, psychologist, traditional tribal therapist and healer, spiritual leader, historian, or elder").
These authorities support the view that under subpart D.4 (b)(iii) of the BIA Guidelines, social workers testifying in a proceeding subject to the ICWA must have substantial education and experience in the area of social work beyond the typical qualifications for the profession. See 44 Fed.Reg. 67,593.
Applying subpart D.4 (b)(iii) of the BIA Guidelines (having previously found that the other subparts were not met), neither Courtney nor Howes, the social workers who testified in this case, met the standard. Both Courtney, who testified at the CINC hearing, and Howes, who testified at the termination hearing, graduated with bachelor's degrees a mere 5 months before M.F.'s birth and had been licensed by the state of Kansas for only about 3 months when they became M.F.'s case workers. There was no evidence of any other education, experience, or specialized expertise. By the time of the termination hearing, Howes had garnered more experience but still had practiced her profession less than 2 years. These qualifications pale in comparison to those considered in cases from other jurisdictions where appellate *1186 courts found an abuse of discretion in qualifying a social worker as an expert. E.g., In re Interest of Shayla H., 17 Neb.App. at 449-50, 764 N.W.2d 119 (11 years of case work experience insufficient). We affirm the Court of Appeals' conclusion that neither Courtney nor Howes qualified as an expert witness as required by the ICWA.
The GAL also takes issue with the Court of Appeals' statement that the qualified expert must "testify that evidence existed to support the State's burden under the ICWA." In re M.F., 41 Kan.App.2d at 935, 206 P.3d 57. The GAL interprets this statement to mean that a qualified expert must offer a specific opinion as to whether or not the State's evidence meets the burden of proof. It seems, rather, that the Court of Appeals' statement is merely a reiteration of the ICWA standard that a decision to terminate parental rights must be based on "evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f). The expert need not opine on the ultimate issue of whether the State met its burden of proof. But the expert's opinion must support the ultimate finding of the district court that continued custody by the parent will result in serious emotional or physical damage to the child. See, e.g., Marcia V., 201 P.3d at 506; Steven H. v. DES, 218 Ariz. 566, 572, 190 P.3d 180 (2008); State ex rel. SOSCF v. Lucas, 177 Or.App. 318, 326, 33 P.3d 1001 (2001), rev. denied 333 Or. 567, 42 P.3d 1245 (2002).

Harmless Error Analysis
The importance of this requirement weighs heavily on our consideration of whether the lack of testimony by an ICWA qualified expert requires us to reverse the district court's decision that M.F. was a child in need of care and the decision that his biological mother's rights should be terminated. The State suggests we do not have to reverse those decisions because the parents clearly lacked the interest and ability to care for M.F.'s extraordinary medical needs. This argument is, in essence, a harmless error analysis.
There is support for applying a harmless error standard when a district court fails to comply with the ICWA, including decisions by our Court of Appeals. See In re S.M.H., 33 Kan.App.2d at 441, 103 P.3d 976 ("nor can we conclude that this error is harmless"); In re Interest of Enrique P., 14 Neb.App. 453, 471, 709 N.W.2d 676 (2006) (failure to provide qualified expert witness was harmless when psychological evaluation and caseworkers' court reports clearly and convincingly showed that parental custody would result in serious damage to child); In re G.F., 181 Vt. 593, 596-97, 923 A.2d 578 (2007) (failure of trial court to make specific findings under 25 U.S.C. § 1912 was harmless error when evidence overwhelmingly supported findings); Elrod, Child Custody Practice and Procedure § 3:5 (2010 Supp.) (recognizing that California case, In re Cheyanne F., 164 Cal.App.4th 571, 79 Cal.Rptr.3d 189 [2008], found that the errors and omissions in ICWA notice requirements are reviewed under harmless error standard); but see In re B.R., 176 Cal. App.4th 773, 785, 97 Cal.Rptr.3d 890 (2009) (holding that lack of notice to tribe under ICWA of notice of termination of parental rights proceeding required remand and was not harmless error);
Nevertheless, in applying the harmless error standard, it is difficult to conclude a procedural violation of the ICWA can be harmless in light of 25 U.S.C. § 1914 (2006), which provides:
"Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title."
The expert witness provision is found in section 1912, so a lack of qualified expert witness testimony creates the potential of future invalidation of the foster care placement and termination of parental rights. Under those circumstances, the lack of a *1187 qualified expert witness cannot be considered harmless. Consequently, we conclude the error in this case requires us to reverse and remand for proceedings consistent with the requirements of the ICWA, beginning with a rehearing of the decision to determine the child is in need of care.

OTHER ISSUES
The GAL and State's petitions for review also raise arguments and issues regarding whether the Court of Appeals erred in concluding the social workers' opinions did not support the district court's decision, the district court erred in failing to journalize its CINC findings, and the district court erred in failing to make required findings of "active efforts ... to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful" as required by 25 U.S.C. § 1912(d).
The outcome of these issues will not impact the disposition of this appeal because we have determined the district court's decisions to place M.F. in SRS's custody as a child in need of care and to terminate parental rights were in error and the judgment must be reversed. Because we found error in the initial phase of this casethe CINC proceedingvirtually all of the procedure will be repeated and the procedural defects alleged in this appeal are moot. Nevertheless, these issues could be addressed if they are likely to recur on remand. See, e.g., State v. Wells, 289 Kan. 1219, ___, 221 P.3d 561 (2009). That is not the case, however. The evidence before the district court and the court's findings regarding that evidence will necessarily differ from that before us now. Because the remaining issues are factually driven and a new record will have to be made on remand, we simply reiterate and emphasize that the ICWA requires the State and the district court to comply with the heightened standards of the ICWA and any state standard that provides greater protection to the rights of the parent. On appeal, the record of the findings must be adequate to allow an appellate court to determine compliance with all of the ICWA requirements, including those imposed by 25 U.S.C. § 1912, and any applicable state provisions. In this regard, we emphasize that the best practice is to include in a journal entry of judgment all findings necessary to support a CINC or termination of parental rights determination. See In re B.E.Y., 40 Kan.App.2d 842, 844, 196 P.3d 439 (2008); In re Adoption of Baby Boy M., 40 Kan.App.2d 551, 561-62, 193 P.3d 520 (2008).
The Court of Appeals' decision reversing and remanding to the district court for further proceedings in compliance with the ICWA is affirmed. Judgment of the district court is reversed, and the case is remanded for further proceedings.