NOT DESIGNATED FOR PUBLICATION

No. 119,156

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of D.H. Jr.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Meade District Court; VAN Z. HAMPTON, judge. Opinion filed April 5, 2019. Reversed and remanded with directions.

*Chay Howard*, of Greensburg, for appellant natural mother.

*Clay Adam Kuhns*, county attorney, and *Laura H. Lewis*, former county attorney, for appellee.

Before GREEN, P.J., SCHROEDER, J., and STUTZMAN, S.J.

PER CURIAM: The Meade County District Court found D.H. to be a child in need of care and ultimately entered an order terminating his parents' rights. This court affirmed the district court's order for termination of parental rights, *In re D.H.*, 54 Kan. App. 2d 486, 401 P.3d 163, *rev. denied* 307 Kan. 987 (2017), but remanded to the district court for compliance with the notice requirements of the Indian Child Welfare Act (the Act), 25 U.S.C. § 1901 et seq. (2012). D.H.'s mother, R.H. (Mother), now appeals the district court's finding that the State's revised notice complied with the Act. She contends the State omitted information about D.H.'s great-grandparents that was required by the regulations that govern notice under the Act. We agree and again remand to the district court with directions.

1

FACTS AND PROCEDURAL BACKGROUND

On November 3, 2014, the State filed a petition asking the Meade County District Court to find D.H. was a child in need of care. D.H. was placed in protective custody and at the hearing on temporary orders two days later, D.H.'s parents told the court D.H. had Native American heritage. About two weeks after that, at a case plan conference, D.H.'s paternal grandmother S.H. (Grandmother) signed an affidavit representing that D.H. might be eligible for enrollment as a member of the Cherokee Nation, although she was not herself an enrolled member. In accordance with the Act, the Meade county attorney sent a notice of the proceedings to the Cherokee Nation in Tahlequah, Oklahoma. The notice provided names, dates of birth, relationships, and current addresses for D.H., Mother, and D.A.H. (Father). The notice also gave Grandmother's name, current address, and relationship, but it omitted her date of birth. On December 9, 2014, the district court adjudicated D.H. as a child in need of care and placed him temporarily with Grandmother.

By a letter dated December 9, 2014, the Cherokee Nation responded to the notice the county attorney had sent, stating the Cherokee Nation Indian Child Welfare had examined the tribal records and reported that D.H. did not meet the definition of "Indian child" in the Act, so the Cherokee Nation had no standing to intervene "based on the information exactly as provided by you." The response stated further that:

"Because 'ENROLLED TRIBAL MEMBER' AND 'ELIGIBLE FOR ENROLLMENT' are different, a conclusive finding of 'eligible for enrollment' requires the full names, to include maiden names, and dates of birth for the direct biological lineage linking the child to an enrolled member of the tribe. It is impossible for Cherokee Nation to confirm or deny a claim of 'eligible for enrollment' without this information.

"If you wish to send additional information, please respond in writing with the additional lineage including the child's name and date of birth so we can reference the correct file."

2

On May 31, 2016, the district court terminated both Mother's and Father's parental rights to D.H.

Mother appealed from the termination and asked this court to exercise the authority described in *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986), to remand to the district court for a hearing on her claim she was denied effective assistance of counsel. Mother based her argument in part on her first appointed counsel's statements regarding jurisdiction under the Act. Specifically, she asserted he failed to raise Native American heritage as an issue and he told her the tribe would take D.H. away. This court granted Mother's motion to remand based on her ineffectiveness claim.

On remand, the district court found there was evidence to support the claim that Mother's counsel's representation "was per se below the reasonable attorney standard," but she was not prejudiced by that deficient performance. This court agreed with the district court's assessment of that attorney's representation and also concurred the deficient performance was harmless since it occurred very early in the case and Mother had months of hearings and visits thereafter, and she "subjected the State's case to meaningful adversarial testing during the termination hearing." *In re D.H.,* 54 Kan. App. 2d at 500. The court, however, concluded that the question marks in the Cherokee Nation's response, where Grandmother's date of birth would have been located, was a "request for more information," and found the tribe's response "[did] not provide a definitive answer to whether D.H. . . . was eligible for enrollment in the Cherokee Nation." 54 Kan. App. 2d at 503.

The court upheld the termination of both parents' rights but remanded the case to the district court to determine whether "after proper notice to the Cherokee Nation . . . this child is, according to the Nation, an Indian child." 54 Kan. App. 2d 504. Then, if the district court were to find D.H. was not subject to the Act, it should reaffirm its

termination order, but if D.H. was found to be an Indian child, the order should be set aside and the case would continue in compliance with the Act. 54 Kan. App. 2d at 504.

The record does not include the subsequent notice from the State but does contain another response from the Cherokee Nation. That letter included a reference to Grandmother's formerly missing date of birth as well as an addition to her name that may be a former name. In the letter the Cherokee Nation stated D.H. was:

> "NOT an 'Indian child' . . . in relation to the Cherokee Nation as defined in [the Act]. Therefore, the Cherokee Nation does not have legal standing to intervene *based on the information exactly as provided by you. Any incorrect or omitted information could invalidate this determination.*" (Emphasis added).

On remand, the district court noted the omitted information about Grandmother had been provided and the Cherokee Nation again had concluded D.H. was not an Indian child. The court also denied Mother's request to send another notice to the Cherokee Nation that would include names, birthdates, and maiden names for D.H.'s great-grandparents.

Mother timely appealed the district court's decision, and the State and the paternal grandmother filed a motion for involuntary dismissal, arguing this court lacked jurisdiction under K.S.A. 2018 Supp. 38-2273. This court granted the motion, but our Supreme Court granted Mother's petition for review, then reversed the dismissal and ordered reinstatement of this appeal.

ANALYSIS

Mother contends that, even on its second attempt, the State failed to send a notice to the Cherokee Nation that met the full requirements of the Act, and the district court committed error by approving that notice. Specifically, Mother argues the State's revised

4

notice to the Cherokee Nation was inadequate because it failed to provide any information about D.H.'s paternal great-grandparents. The application of and compliance with the Act is a question of law over which this court exercises unlimited review. *In re A.J.S.,* 288 Kan. 429, 431, 204 P.3d 543 (2009); *In re D.H.*, 54 Kan. App. 2d at 501.

The State contends its revised notice was adequate as the Cherokee Nation has twice declined to intervene and "[the State] was not able to provide any information regarding [D.H.]'s great-grandparents as it is not known to the State, nor was it provided by any party at any point in the proceedings." Further, the State submits the second notice was in substantial compliance with the Act.

Cases concerning children in need of care fall within the scope of the Revised Kansas Code for Care of Children (the Code). K.S.A. 2018 Supp. 38-2201 et seq. However, the Code does not apply when the "court knows or has reason to know that an Indian child is involved in the proceeding." *In re M.F.*, 290 Kan. 142, 149, 225 P.3d 1177 (2010). In those cases, termination of parental rights of Native American children is governed by the Act. See K.S.A. 2018 Supp. 38-2203(a); *In re M.F.*, 290 Kan. at 148-49.

The Bureau of Indian Affairs Guidelines instruct that "[i]f there is any reason to believe the child is an Indian child, the agency and State court must treat the child as an Indian child, unless and until it is determined that the child is not a member or is not eligible for membership in an Indian tribe." 80 Fed. Reg. 10146-02, Section A.3(d) (February 25, 2015). Whether a child is considered Indian under the Act is ultimately a determination for the child's potential tribe, not the district court. *In re M.H.*, 50 Kan. App. 2d 1162, 1166, 337 P.3d 711 (2014).

Given the facts of this case, neither party here disputes that notice to the Cherokee Nation was mandatory. Nor is there disagreement about the applicable requirements for the content of that notice, as this court previously observed:

"The notice shall include the following information, if known:

'(1) Name of the Indian child, the child's birthdate and birthplace.

'(2) Name of Indian tribe(s) in which the child is enrolled or may be eligible for enrollment.

'(3) All names known, and current and former addresses of the Indian child's biological mother, biological father, maternal and paternal grandparents *and great grandparents* or Indian custodians, including maiden, married and former names or aliases; birthdates; places of birth and death; tribal enrollment numbers, and/or other identifying information.

'(4) A copy of the petition, complaint or other document by which the proceeding was initiated.' 25 C.F.R. § 23.11 (d) (2014)." (Emphasis added). *In re D.H.*, 54 Kan. App. 2d at 502.

Further, the State does not assert either of its notices to the Cherokee Nation included the required information about D.H.'s great-grandparents, and it directs us to nothing in the record showing any effort whatsoever to ascertain information about D.H.'s great-grandparents. It simply claims it did not have the information and no one provided it. The initial affidavit triggering the notice provisions of the Act came from Grandmother, who was listed as D.H.'s placement at the time of the termination order and who participated through counsel and phone at the permanency hearing held by the district court on remand to rule on the State's second notice. Grandmother's continued participation in the case suggests little would have been required to make inquiry through her for information about her own parents. While the "if known" provision of the regulation may not require exhaustive genealogical research, we find more is required than a representation of passive nescience.

The State nonetheless reasonably notes that the definition of "Indian child," coupled with the two responses from the Cherokee Nation, may well make the absence of information about D.H.'s paternal great-grandparents moot. Under the statutory definition:

6

"'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. §1903(4) (2012).

Information about the names and dates of birth for D.H., Mother, and Father was referenced in both response letters from the Cherokee Nation. And each time the letter stated: "none of the names provided can be found as current enrolled members," thus eliminating application of either part of the Indian child definition. The State argues we are therefore in a position to declare the omission of great-grandparent information to be "harmless error." The State, however, fails to pair that argument with supporting authority and neither this court nor our Supreme Court has applied a harmless error analysis to this federal notice requirement. "A failure to support an argument with pertinent authority or to show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. Therefore, an argument that is not supported with pertinent authority is deemed waived and abandoned." *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

Finally, the State urges us to consider "child's time" in moving this case to a final resolution. We are aware of the need for all cases under the Code to be resolved as promptly as possible, consistent with the law. That consideration, however, does not give this court license to declare a case concluded when an issue remains unresolved. Paragraph 10 of the form on which the State filled out its December 2014 "Indian Child Welfare Act Notice" stated:

"All names known, including maiden, married and former names or aliases, and current and former addresses of the child's maternal and paternal grandparents *and great grandparents* or Indian custodians, birthdates, places of birth and death, tribal enrollment numbers, and other identifying information are provided below." (Emphasis added.)

7

A complete response at that time, rather than a listing of only Grandmother's name and address, would have precluded the issue presently before us.

The district court's order on the most recent remand showed adoption as the case plan for D.H. Therefore, the additional time required to issue a compliant notice must be weighed against eliminating a potential vulnerability in the termination process to ensure there is a sound foundation for this child's future adoption.

We conclude the case must again be remanded to the district court and the State must fully comply with the notice requirements under the Act as they applied at the outset of the case. If the Cherokee Nation again determines D.H. is not an Indian child, no further action is required. This court has already affirmed the termination of parental rights. If in response to the revised notice D.H. should be found to be an Indian child, the district court must set aside the termination order and proceed in compliance with the Act.

Reversed and remanded with directions.