NOT DESIGNATED FOR PUBLICATION

No. 127,282

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of D.H. and B.F.,
Minor Children.

MEMORANDUM OPINION

Appeal from Shawnee District Court; PENNY R. MOYLAN, judge. Submitted without oral argument. Opinion filed June 6, 2025. Reversed and remanded with directions.

*Jennifer Martin Smith*, of Alderson, Alderson, Conklin, Crow & Slinkard, L.L.C., of Topeka, for appellant natural mother.

*Jodi Litfin*, deputy district attorney, and *Michael F. Kagay*, district attorney, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

PER CURIAM:  The natural mother (Mother) timely appeals the district court's decision to terminate her parental rights to her two minor children. The natural father is not a party to this appeal nor is another child who has reached the age of majority. Although Mother raises three issues on appeal, we find the first issue—whether the State properly complied with the notice requirements under the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. § 1901 et seq.—to be dispositive. Based on our review of the record on appeal, we find that the State's notice to the Choctaw Nation lacked sufficient information for the tribe to determine whether the ICWA applies in this case. Thus, we reverse and remand this case to the district court so that it can direct the State to provide the Choctaw Nation with the information necessary to determine whether the children are eligible for membership.

1

FACTS

On March 11, 2019, the State of Kansas filed child in need of care (CINC) cases against Mother under K.S.A. 38-2202(d)(1), (2), (3), and (11), concerning her two minor children. Several months later, the district court adjudicated both children as children in need of care and placed them in the custody of the Kansas Department for Children and Families (DCF). In January 2021, the district court held a permanency hearing that determined reintegration was no longer possible.

On June 25, 2021, the State then filed motions to terminate Mother's parental rights as to both children. At a second permanency hearing—held on December 13, 2021—Mother appeared in person and requested a hearing on the merits. Over the next year and a half, several additional pretrial hearings were held, and several continuances were granted. Although Mother participated in some of the hearings personally, her appearances were sporadic. This led to the district court repeatedly warning Mother that it might allow the State to proceed via proffer if she did not personally appear at future hearings.

At a pretrial hearing held in May 2022, Mother once again failed to appear in person. As a result, the district court permitted the State to proceed by presenting a proffer of the evidence in support of its motions to terminate Mother's parental rights. Although the district court determined that Mother's parental rights should be terminated, it later set aside the termination orders. Over the next few months, several additional pretrial hearings were held and the case was set for the final hearing to begin on April 19, 2023.

Yet at a pretrial hearing held on April 13, 2023, Mother's counsel requested a continuance of the hearing date for personal reasons. At this pretrial hearing, Mother's attorney informed the district court—for the first time—his client may be eligible for

enrollment as a member of the Choctaw Nation of Oklahoma. The district court granted counsel's request for a continuance, set the case for another pretrial hearing, and instructed Mother to keep her attorney updated regarding the status of her possible enrollment in the Choctaw Nation.

On June 12, 2023, Mother appeared by counsel but did not personally appear for the pretrial hearing. While her attorney advised the district court that Mother intended to participate at the hearing, he did not know why she was absent from the hearing. The State informed the district court that it had reached out to the Choctaw Nation but received "no response . . . as to whether [Mother's] application has been submitted."

The district court then permitted the State to proffer its evidence in support of the motions to terminate Mother's parental rights. In deciding to do so, the district court explained:

> "I think we have a trial set. The Court would just note that [Mother's counsel] ha[s]
> emailed her and texted her. She's not in jail. She hasn't advised why she's not present. I
> did not hear you say that she advised [that] she would not be present and [that she]
> instructed you to object to a proffer today. So[,] the Court will allow the State to proceed
> via proffer, with the understanding [that] I will not vacate the trial date at this time."

Although the district court did not remove the upcoming hearing date from its schedule, it allowed the State to present its proffer of evidence in an attempt to establish Mother's unfitness. The district court then inquired whether Mother's attorney had a response to the proffer. But Mother's attorney indicated that he had none. After hearing the proffer, the district court stated that it was taking judicial notice of the official court file as well as its social file. It also took judicial notice of the State's termination motions along with the legal authorities cited in support of the motions.

3

The district court then proceeded to announce its ruling from the bench. First, the district court found that the State presented clear and convincing evidence to establish Mother's unfitness to parent both children under K.S.A. 38-2269(b)(7), (b)(8), (b)(9), (c)(2), and (c)(3). Next, the district court found that Mother's unfitness—as a parent—was unlikely to change in the foreseeable future. Finally, the district court found that it was in the best interests of the minor children to terminate Mother's parental rights.

The next day, the district court entered separate written orders setting out its findings and conclusions regarding each of the minor children. In addition, the district court stated that "[a]t this time, ICWA is not applicable." Subsequently, Mother filed a motion to set aside the orders terminating her parental rights as well as a motion to continue or stay the termination proceedings pending a determination of whether the children were eligible for membership in the Choctaw Nation.

On July 26, 2023—the date on which the hearing was scheduled to commence—Mother appeared before the district court in person and by counsel. The guardian ad litem for the children and the children's maternal grandmother also appeared. Even so, a hearing was not held. Instead, the district court considered and denied Mother's motion to set aside the termination orders as well as her motion to continue or stay termination proceedings until a determination could be made regarding the applicability of ICWA.

As to Mother's claim that the minor children may be eligible for enrollment as members of the Choctaw Nation, counsel for the State pointed out that she had recently contacted the Choctaw Nation via email seeking information regarding Mother's enrollment status. The email—which is dated July 24, 2023, at 2:09 p.m.—stated:

"To whom it may concern,

4

"Can you please tell me if [Mother] is a member of the Choctaw Nation of Oklahoma? Can you tell me if her children, [D.H.] and/or [B.F.], are members of the Choctaw Nation of Oklahoma? If the children are not members, but Mother is a member, are these two children eligible for membership?

"The reason I ask is because these children have been in the custody of the State of Kansas for 4 + years and we are scheduled to have a trial to terminate Mother's parental rights starting on Wednesday July 26th. Mother only recently reported that she may be eligible for Choctaw Nation of Oklahoma membership, but [she] hasn't reported [whether] she is a member or that the children are members. Therefore, I need to determine if ICWA is applicable to these children, at this time?

"Any help which you can provide would be appreciated.

"Thank you,

"Rachel Miller
"Deputy District Attorney
"Family Law Division"

The following morning at 8:59 a.m., an office manager for the Choctaw Nation sent a response that simply stated, "No [r]ecord." According to counsel for the State, she assumed this response meant neither Mother nor her minor children were members of the Choctaw Nation. But the children's maternal grandmother informed the district court that her father was Choctaw and "lived in Oklahoma [his] whole life." She also conveyed her willingness to provide names or other information about her family, but explained to the court that "nobody's ever contacted [her] during this whole situation."

On September 19, 2023, the district court entered a journal entry denying both of Mother's motions to set aside the termination orders and her motion to continue or stay proceedings pending an ICWA determination. In the journal entry, the district court found "no reason to set aside the order[s] based on consideration of the history and facts

of the case." It also found that "it is not in the best interest of the children to continue to delay permanency." Finally, the district court noted "that as of the June 12th pretrial, ICWA was not applicable and it was not applicable as of today."

ANALYSIS

On appeal, Mother contends that the State failed to comply with the federal notice requirements mandated under the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et seq. In support of her contention, she argues that the email sent by the State to the Choctaw Nation of Oklahoma—just two days before the trial date—was deficient. In response, the State contends that no notice was required because the minor children were not "Indian children" under ICWA. But no such finding was made by the district court. Instead, the district court simply ruled that "[a]t this time, ICWA is not applicable."

In determining whether the State's notice to the Choctaw Nation was deficient, we must interpret the ICWA. Such interpretation presents a question of law subject to unlimited review. *In re D.H.*, 54 Kan. App. 2d 486, 501, 401 P.3d 163 (2017). To the extent that this determination may be dependent on questions of fact, we review the district court's findings for substantial competent evidence. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). Ultimately, the question of whether a child is considered to be "Indian" under the ICWA is determined by the potential tribe rather than the district court. *In re M.H.*, 50 Kan. App. 2d 1162, 1166, 337 P.3d 711 (2014).

Normally, the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., governs proceedings to terminate parental rights. But the ICWA applies when the "[district] court knows or has reason to know that an Indian child is involved in the [termination] proceeding[s]." K.S.A. 2023 Supp. 38-2203(a); see *In re M.F.*, 290 Kan. 142, 148-49, 225 P.3d 1177 (2010). The ICWA requires states to protect the heritage of Indian children by requiring a higher standard of evidence. When the ICWA applies, the

State must prove beyond a reasonable doubt—including qualified expert testimony—that serious emotional or physical damage to the child would likely result if left in custody of the parent or Indian custodian. 25 U.S.C. § 1912(f).

When the State knows or has reason to know that an Indian child—as defined in 25 U.S.C. § 1903(4)—may be involved in termination proceedings, it must comply with the ICWA's notice requirements. Inquiry by the State into whether a child has Indian lineage is essential for the applicable Indian nation or tribe to determine eligibility and potentially intervene in the proceedings. 25 C.F.R. § 23.111(a)-(e). Moreover, once the State has reason to know that an Indian child may be the subject of termination proceedings, "the court must consider the child to be an Indian child until the tribe advises otherwise." *In re D.H.*, 54 Kan. App. 2d at 502.

Federal regulations outline the requirements for how a state court should determine whether there is "reason to know" that a termination proceeding involves an Indian child which subsequently prompts the ICWA's notice requirements. 25 C.F.R. § 23.107(c) (2016). Specifically, 25 C.F.R. § 23.107(c) provides:

"A court . . . has reason to know that a child involved in [a termination of parental rights] proceeding is an Indian child if:

"(1) *Any participant* in the proceeding, officer of the court *involved in the proceeding*, Indian Tribe, Indian organization, or agency *informs the court that the child is an Indian child*;

"(2) *Any participant in the proceeding*, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency *informs the court that it has discovered information indicating that the child is an Indian child*;

"(3) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;

7

"(4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village;

"(5) The court is informed that the child is or has been a ward of a Tribal court; or

"(6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe." 25 C.F.R. § 23.107(c)(1)-(6) (Emphases added).

Based on our review of the record on appeal, we find that there was reason to know that the minor children may be Indian children under 25 C.F.R. § 23.107(c)(1) and (2). At the April 2023 pretrial hearing, Mother informed the district court of her belief that she may be eligible for enrollment as a member of the Choctaw Nation of Oklahoma. Then, on July 24, 2023—just two days before the final hearing was to be held—the State's attorney emailed the Choctaw Nation, inquiring whether Mother was a member and whether the minor children were eligible for membership. In response, a representative of the tribe simply stated, "No [r]ecord."

At the final hearing held on July 26, 2023, additional information regarding the children's potential Indian lineage was brought to the district court's attention by their maternal grandmother. She advised the district court that her father was Choctaw and that he had lived his entire life in Oklahoma. The maternal grandmother also volunteered to provide names alongside other pertinent information to the attorneys. Accordingly, the district court instructed her to meet with the attorneys—after the hearing—to provide additional information regarding the family's lineage.

Unfortunately, we cannot tell from the record whether the district court's direction was followed or whether the grandmother ever spoke to the attorneys after the final hearing. The record is also silent about any subsequent actions taken by the State to

8

investigate the truth of the maternal grandmother's assertions. Still, we find that the ICWA's notice requirements were triggered because there is an identifiable tribe—the Choctaw Nation of Oklahoma—and a specific person in the children's lineage—a great-grandfather—who allegedly belonged to the tribe.

Because the State had reason to know that the minor children in this case may be Indian children, we find that compliance with the ICWA notice requirements was essential. See 25 C.F.R. § 23.107(c)(1)-(2) To comply with ICWA, the notice to the Choctaw Nation "must [have] be[en] sent by registered or certified mail with return receipt requested. Notice may also be sent via personal service or electronically, but such alternative methods do not replace the requirement for notice to be sent by registered or certified mail . . . ." 25 C.F.R. § 23.111(c).

Furthermore, under 25 C.F.R. § 23.111(d), the State must provide the following information—in clear and understandable language—in the notice:

"(1) The child's name, birthdate, and birthplace;

"(2) All names known (including maiden, married, and former names or aliases) of the parents, the parents' birthdates and birthplaces, and Tribal enrollment numbers if known;

"(3) If known, the names, birthdates, birthplaces, and Tribal enrollment information of other direct lineal ancestors of the child, such as grandparents;

"(4) The name of each Indian Tribe in which the child is a member (or may be eligible for membership if a biological parent is a member);

"(5) A copy of the petition, complaint, or other document by which the child-custody proceeding was initiated and, if a hearing has been scheduled, information on the date, time, and location of the hearing;

"(6) Statements setting out:

(i) The name of the petitioner and the name and address of petitioner's attorney;

(ii) The right of any parent or Indian custodian of the child, if not already a party to the child-custody proceeding, to intervene in the proceedings.

(iii) The Indian Tribe's right to intervene at any time in a State-court proceeding for the foster-care placement of or termination of parental rights to an Indian child.

(iv) That, if the child's parent or Indian custodian is unable to afford counsel based on a determination of indigency by the court, the parent or Indian custodian has the right to court-appointed counsel.

(v) The right to be granted, upon request, up to 20 additional days to prepare for the child-custody proceedings.

(vi) The right of the parent or Indian custodian and the Indian child's Tribe to petition the court for transfer of the foster-care-placement or termination-of-parental-rights proceeding to Tribal court as provided by 25 U.S.C. 1911 and § 23.115.

(vii) The mailing addresses and telephone numbers of the court and information related to all parties to the child-custody proceeding and individuals notified under this section.

(viii) The potential legal consequences of the child-custody proceedings on the future parental and custodial rights of the parent or Indian custodian.

(ix) That all parties notified must keep confidential the information contained in the notice and the notice should not be handled by anyone not needing the information to exercise rights under ICWA." 25 C.F.R. § 23.111(d)(1)-(6)(ix).

In addition, the State retains its mandatory obligation to provide additional information upon the request of the tribe or nation. See *In re D.H.*, 54 Kan. App. 2d at 502-03.

10

The only notice in the record on appeal sent by the State to the Choctaw Nation is the email dated July 24, 2023. We find nothing in the record to suggest that notice has been sent by registered or certified mail as required by federal regulations. See 25 C.F.R. § 23.111(c). Likewise, we find that the email was deficient because it only contained some of the information necessary for the Choctaw Nation to determine the children's eligibility for enrollment.

In particular, we find that the email failed to include required information such as the children's or Mother's birthplaces; the names, birthdates, birthplaces, or other information regarding the children's grandparents or other direct lineal ancestors; a copy of the petition or other document by which the termination proceedings were initiated; and the time or location of the final termination hearing. See 25 C.F.R. § 23.111(d)(1)-(5). Similarly, the email did not include several statements required by 25 C.F.R. § 23.111(d)(6)(i)-(ix). Accordingly, we conclude that the ICWA notice provided by the State to the Choctaw Nation was deficient and as a result, we reverse the termination of Mother's parental rights.

In considering the appropriate remedy in cases where the State has provided deficient notice under the ICWA, our court has found that the case must be remanded to the district court with instructions to send proper notice with all relevant information. See *In re D.H.*, 54 Kan. App. 2d at 503-04; *In re D.M.H.*, No. 127,428, 2024 WL 4314303, at *5 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan.__ (January 29, 2025); *In re D.M.H.*, No. 127,331, 2024 WL 4903516, at *9-10 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan.__ (February 28, 2025). And under the circumstances presented, we also find it appropriate to remand this matter so that the district court can ensure that the State sends proper notice to the tribe. See 25 C.F.R. § 23.111(d).

Once the Choctaw Nation makes an informed determination regarding the children's eligibility for enrollment, the district court can then decide whether the

11

elevated burden of proof required by the ICWA applies. See 25 U.S.C. § 1912(f). Likewise, once the Choctaw Nation determines the children's status, it can make an informed decision about whether to exercise its rights under the ICWA. Finally, in light of our decision to remand this matter to the district court, we do not find it necessary to address the other issues presented.

In summary, we reverse the termination of Mother's parental rights due to the State's failure to comply with the notice requirements under the ICWA, and we remand this case to the district court with directions that the State properly comply with the ICWA notice requirements before proceeding to a final termination hearing.

Reversed and remanded with directions.