LILLEHAUG, Justice.
*824 In April 2016, Clay County Social Services filed petitions to terminate the parental rights of S.R.K. and O.A.K. Following a trial governed by the Indian Child Welfare Act (ICWA) and the Minnesota Indian Family Preservation Act (MIFPA), the district court terminated parental rights. We granted review to determine what evidence is required by ICWA and MIFPA for a district court to terminate parental rights, and whether the district court properly determined that the evidence was sufficient here. Because ICWA and MIFPA require qualified expert witness testimony to support the court's determination that "continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child," 25 U.S.C. § 1912(f) (2012), we affirm the court of appeals in part and reverse in part.
FACTS
Appellants S.R.K. and O.A.K. ("the parents") married in July 2012 and divorced in December 2016. S.R.K. ("the mother") is the biological mother of 5 children-M.G.B., A.B., L.B., K.K., and A.K.K. She is an enrolled member of Spirit Lake Nation ("the Tribe"), and her children are all enrolled members or eligible for membership in the Tribe. O.A.K. ("the father") is the father of three of those children-L.B., K.K., and A.K.K.-and is not a member of any Indian tribe.
Respondent Clay County Social Services (CCSS) has been involved with the parents for several years, responding to verbal domestic incidents, drug and alcohol use, chronic homelessness and instability, and alleged criminal activity. This case began in June 2015, after CCSS received a report from Prairie St. Johns, a psychiatric hospital, that hospital staff were unable to reach the mother to plan for her eldest child's discharge from the hospital. A social worker was assigned to the case. One month later, the children were removed from the home following a violent incident, witnessed by the eldest child, that resulted in the mother being hospitalized with a stab wound.[1] The children were placed in emergency foster care, and CCSS brought CHIPS petitions seeking out-of-home placement for the children.[2]
In December 2015, the district court found the children to be in need of protection *825 or services, granted legal custody of the children to CCSS, and ordered out-of-home placement. Three court-ordered case plans were prepared for the parents, "each with the primary goal of reunification." Under these plans, the parents were ordered to complete chemical dependency and parental capacity evaluations, follow all recommendations from these evaluations, maintain sobriety, attend all scheduled visits with the children, participate in services for the children, have safe interactions with the children, and remain law abiding. The father was additionally required to establish safe and stable housing, follow probation guidelines, and put his children's needs first. The mother was additionally required to establish stable housing and ensure that only "safe, sober adults" interacted with her children. The court found that these plans were "designed to address chronic issues related to chemical dependency, domestic violence, chaos, instability and mental health issues."
In April 2016, CCSS filed three permanency petitions seeking to terminate the parental rights of mother and father.[3] The petitions raised three grounds for termination: (1) "that the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent and child relationship," Minn. Stat. § 260C.301, subd. 1(b)(2) (2016) ; (2)"that following the child's placement out of the home, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the child's placement," id. , subd. 1(b)(5) (2016) ; and (3)"that the child is neglected and in foster care," id. , subd. 1(b)(8) (2016).
A 3-day trial was held in October and November 2016. Twelve people testified at the trial, including the parents, the guardian ad litem (GAL), the qualified expert witness (QEW), CCSS workers, the parental capacity evaluator, and an ICWA coordinator employed by Spirit Lake. Apart from the parents themselves, no one testified in favor of either parent retaining parental rights.
The ICWA coordinator testified that the mother "wasn't completing any of the services requested of her to obtain her children back," and that the Tribe supported termination. The GAL testified that the best interests of the children required permanency, the parents were unable to provide that permanency, and that she supported termination of parental rights.
Before trial, the QEW signed notarized affidavits stating that: (1) "It is in the children's best interests that they be granted permanency in a home approved by the Spirit Lake Tribe," (2) "The parent(s) have failed to adequately address the issues leading to the original CHIPS adjudication," (3) "Appropriate services were provided to the family to prevent the out-of-home placement," (4) "Continued custody of the children by the parent(s) is likely to result in serious physical and/or emotional damage to the child," and (5) "The Spirit Lake Tribe has determined that the child cannot be returned to the parent(s) and supports permanency for this child." The affidavits were admitted into evidence.
*826 At trial, the QEW testified in favor of terminating parental rights. Then, when asked whether she had "an opinion about whether the children can be returned to the parents," she responded, "[n]o, I don't have an opinion about it." The QEW was then presented with her affidavits, and asked if "the opinions that are in [the affidavits] ... remain your opinions today?" She responded: "Yes." When pushed further, and asked whether the father was "honestly considered ... when [she] prepared the affidavits," she responded: "When I prepared the affidavit, no, because [the mother was] the enrolled member and [she's] the one that I looked at more." Based on this testimony, the district court found that the QEW "stands by the information in her [a]ffidavits.... [and] supports termination of parental rights."
In December 2016, the district court terminated the parental rights of both parents. The court first concluded that ICWA and MIFPA applied to the proceedings and that the laws' requirements had been satisfied. The court terminated the mother's parental rights because it concluded: (1) "[Mother] is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct ... of a duration or nature that renders [her] unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child"; (2) "active efforts ... have failed to correct the conditions leading to the [c]hildren's [out-of-home] placement"; (3) "the [c]hildren are neglected and in foster care"; and (4) "it is in the best interests of the [c]hildren." These same conclusions of law were made as the grounds to terminate the father's parental rights.
The parents appealed, and the court of appeals affirmed the district court in part, reversed in part, and remanded for additional findings. In re the Welfare of the Children of: S.R.K. & O.A.K. (S.R.K. I) , Nos. 14-JV-16-1365, 14-JV-16-1367, 14-JV-16-1371, 2017 WL 2062137, at *1 (Minn. App. May 15, 2017). As relevant to this appeal, the court held that the district court erred by failing to expressly find, under ICWA and MIFPA, that "continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child," and it remanded for that finding. Id. at *4-5.
On remand, the district court issued a one-sentence addendum to its findings of fact and conclusions of law, stating that "[c]ontinued custody of [the children] ... by [the mother] and/or [the father] is likely to result in serious emotional or physical damage to the [c]hildren." The court provided no additional explanation.
The parents again appealed, arguing that "the evidence does not support beyond a reasonable doubt the district court's finding that [the parents'] continued custody of the children is likely to result in serious emotional or physical damage to the children." In re the Welfare of the Children of: S.R.K. & O.A.K. (S.R.K. II) , Nos. 14-JV-16-1365, 14-JV-16-1367, 14-JV-16-1371, 2017 WL 6273152, at *1 (Minn. App. Dec. 11, 2017). The court of appeals first addressed what ICWA and MIFPA require from a QEW to make the determination regarding the likelihood of serious emotional or physical damage to the children, noting that "[a] court need not rely solely on the testimony of the qualified expert witness." Id. at *2. Because the court deferred to the district court's finding that the QEW "affirmed her affidavit" during her testimony, it was satisfied that "evidence beyond a reasonable doubt support[ed] the district court's finding that *827 the parents' continued custody of the children [would] likely ... result in serious emotional or physical damage to the children." Id. at *2-3. Accordingly, the court affirmed the district court's termination decision.[4] Id. at *4.
We granted the parents' petition for review.
ANALYSIS
I.
The issue presented here is one of first impression for us: what evidentiary showing is required by ICWA and MIFPA for a district court to terminate parental rights in a proceeding under those statutes?
This question requires us to interpret provisions of ICWA and MIFPA. Statutory interpretation is a question of law that we review de novo. In re Welfare of R.S. , 805 N.W.2d 44, 49 (Minn. 2011). "The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous." 500, LLC v. City of Minneapolis , 837 N.W.2d 287, 290 (Minn. 2013) (citation omitted) (internal quotation marks omitted). "A statute is ambiguous only if it is susceptible to more than one reasonable interpretation." Id. To determine the plain meaning of a statute, we will construe the words "according to the rules of grammar and their common and approved usage." Jones v. Borchardt , 775 N.W.2d 646, 647 (Minn. 2009) ; see also Minn. Stat. § 645.08(1) (2016) (same). We will also "look to the dictionary definitions of [the] words and apply them in the context of the statute." State v. Haywood , 886 N.W.2d 485, 488 (Minn. 2016).
At issue here are 25 U.S.C. § 1912(f) and Minn. Stat. § 260.771, subd. 6(a) (2016). The parents argue that these statutes require QEW testimony to support "a finding beyond a reasonable doubt that continued custody of the child would likely result in serious emotional or physical harm to the child," which we refer to as the "serious-damage" determination. They also suggest that the QEW must actually opine that continued parental custody of the children would likely result in serious emotional or physical damage. CCSS disagrees, arguing that the statutes merely require that QEW testimony be presented, but that the testimony need not support the ultimate serious-damage determination.
The ICWA provision at issue here, 25 U.S.C. § 1912(f), provides:
No termination of parental rights may be ordered ... in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses that the continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child.
The MIFPA counterpart provision is substantively identical to the ICWA provision, and provides:
In a termination of parental rights proceeding, the court must determine by *828 evidence beyond a reasonable doubt, including testimony of a qualified expert witness, that continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child as defined in [ 25 U.S.C. § 1912(f) ].
Minn. Stat. § 260.771, subd. 6(a).[5]
Section 1912(f)[6] can be broken down into four clauses: (1) "No termination of parental rights may be ordered ... in the absence of a determination," (2) "supported by evidence beyond a reasonable doubt," (3) "including testimony of qualified expert witnesses,"[7] and (4) "that the continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child."
The first clause-"No termination of parental rights may be ordered ... in the absence of a determination"-provides the subject of the statute: the court's determination. 25 U.S.C. § 1912(f) ; see also Minn. Stat. § 260.771, subd. 6(a) ("In a termination of parental rights proceeding, the court must determine ...." (emphasis added) ).
The second clause-"supported by evidence beyond a reasonable doubt"-establishes that the evidentiary burden that must be satisfied for the court to make its determination is "beyond a reasonable doubt." 25 U.S.C. § 1912(f).
The third clause-"including testimony of qualified expert witnesses"-further identifies what must be included as part of the court's "beyond a reasonable doubt" determination. Id. ; see also Larson v. State , 790 N.W.2d 700, 705 (Minn. 2010) ("[A] limiting phrase ... ordinarily modifies only the noun or phrase that it immediately follows."). The clause provides that testimony from a QEW must support the court's serious-damage determination. But this testimony need not stand alone. The statute provides that the court's serious-damage determination must be supported by evidence "including testimony of qualified expert witnesses." 25 U.S.C. § 1912(f) (emphasis added). "Include" means "[t]o contain as a part of something." Include , *829 Black's Law Dictionary (10th ed. 2014) (emphasis added). So long as the QEW testimony supports the district court's serious-damage determination, section 1912(f) has been satisfied. In other words, the court may pair the required QEW testimony with other supporting evidence to make its serious-damage determination.
The fourth and final clause-"that the continued custody ... is likely to result in serious emotional or physical damage to the child"-completes the first clause, in that it defines what the court's determination must be. 25 U.S.C. § 1912(f).
Read straightforwardly, the statute provides that to terminate parental rights, a district court must determine that "continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child." 25 U.S.C. 1912(f). This determination must be supported by evidence "beyond a reasonable doubt," and part of the supporting evidence must be QEW testimony. Id. The statute is unambiguous.
In light of this plain language, the alternative interpretations of section 1912(f) offered by CCSS and the parents are each untenable. CCSS argues that the statute merely requires that QEW testimony be presented, but that it need not necessarily support the court's serious-damage determination. But this reading would render the QEW-testimony requirement superfluous-why would the statute require a QEW to testify if that testimony could be ignored? See State v. Boecker , 893 N.W.2d 348, 351 (Minn. 2017) ("We interpret a statute as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant." (citations omitted) (internal quotation marks omitted) ). QEW testimony is required because Congress sought to prevent the "unwarranted removal of Indian children from Indian families due to the cultural insensitivity and biases of social workers and state courts." Adoptive Couple v. Baby Girl , 570 U.S. 637, 649, 133 S.Ct. 2552, 186 L.Ed.2d 729 (2013) (plurality opinion).
The parents, on the other hand, suggest that the statute requires that the QEW testify specifically that "continued custody ... is likely to result in serious emotional or physical damage." 25 U.S.C. § 1912(f). This reading overlooks the statute's use of the word "including," as well as the comma separating the QEW clause from the "continued custody" clause. Id. ; see, e.g. , United States v. Ron Pair Enters., Inc. , 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (concluding that a phrase "set aside by commas.... stands independent of the language that follows"). If Congress wanted to impose a requirement that the expert utter a "magic phrase," it could have done so. But as written, neither ICWA nor MIFPA require a specific QEW opinion that "continued custody ... is likely to result in serious emotional or physical damage." 25 U.S.C. § 1912(f) ; Minn. Stat. § 260.771, subd. 6(a). See also Marcia V. v. State , 201 P.3d 496, 508 (Alaska 2009) ("The findings of a likelihood of serious emotional or physical damage are findings that must be made by the trial judge, not the expert witness."); In re M.F. , 290 Kan. 142, 225 P.3d 1177, 1186 (2010) ("The [QEW] need not opine on the ultimate issue of whether the State met its burden of proof."). The QEW's opinion, however, must support that judicial determination.
Accordingly, we conclude that in a termination proceeding governed by *830 ICWA and MIFPA, a court cannot terminate parental rights unless it determines that evidence shows, beyond a reasonable doubt, that continued parental custody of the child is likely to result in serious emotional or physical damage to the child. That determination must be supported by QEW testimony. Although an issue of first impression for us, this holding is consistent with decisions from other states.[8] See Mahowald v. Minn. Gas Co. , 344 N.W.2d 856, 861 (Minn. 1984) (explaining that although decisions from other states are "not binding" on Minnesota courts "as authority," they are nevertheless "persuasive").
II.
Having determined the plain meaning of 25 U.S.C. § 1912(f) and Minn. Stat. § 260.771, subd. 6(a), we next consider whether there was sufficient evidence, including the required QEW testimony, to support the district court's determination that continued custody of the children by mother (S.R.K.) and father (O.A.K.) would likely "result in serious emotional or physical damage to the child[ren]." We will address separately the sufficiency of the evidence presented as to each parent, beginning with the mother.
CCSS argues the evidence presented at trial was sufficient to prove, beyond a reasonable doubt, that continued custody of the children by their mother would likely result in serious damage to the children. We agree.
When a sufficiency-of-the-evidence argument is raised, we "review the district court's findings to determine whether they address the statutory criteria for termination of parental rights and are not clearly erroneous." In re the Welfare of the Children of T.R. , 750 N.W.2d 656, 660 (Minn. 2008). "A finding is clearly erroneous if it is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." Id. at 660-61 (citation omitted) (internal quotation marks omitted).
The testimony and affidavits submitted by the QEW support the proposition that *831 continued custody of the children by their mother would likely cause serious emotional or physical damage to the children. The QEW signed three affidavits, admitted into evidence, stating that "[c]ontinued custody of the children by the parent(s) is likely to result in serious physical and/or emotional damage to the child[ren]." At trial, she confirmed her affidavit opinions regarding the mother. Although the remainder of the QEW's testimony about the mother was somewhat equivocal, the weight and credibility of her testimony are left to the factfinder. See In re the Welfare of L.A.F. , 554 N.W.2d 393, 396 (Minn. 1996) ("Considerable deference is due to the district court's decision [to terminate parental rights] because a district court is in a superior position to assess the credibility of witnesses."); see also In re the Welfare of J.H. , 844 N.W.2d 28, 40 (Minn. 2014) ("[W]e defer to the juvenile court's determination on the credibility and weight to be given [to] witnesses' testimony."); State v. Huss , 506 N.W.2d 290, 292 (Minn. 1993) ("The weight and credibility of the witnesses is for the trier of fact.").
Pairing the required QEW testimony with other evidence in the record, we conclude that it was not clearly erroneous for the district court to determine, beyond a reasonable doubt, that the mother's continued custody would likely result in serious emotional or physical damage to her children. CCSS had been involved with the parents for several years due to "verbal domestic incidents between [the parents], alcohol and drug use, chronic homelessness, supervision concerns, criminal activity by both [parents] and chronic instability." At trial, a psychologist testified that the mother had "repeatedly engag[ed] in behaviors that were grounds for arrest, deceitfulness, impulsiveness, irresponsibility, ... a reckless disregard for safety of others and lack of remorse [for] having hurt people." The psychologist also testified to the mother's history of child neglect and suspected child psychological abuse, and she opined that "the children should not be returned" to their mother's care. The ICWA coordinator testified that the mother "wasn't completing any of the services requested of her to obtain her children back." A CCSS child protection specialist testified that she was concerned about the mother's "ability to keep her mental health stable in order to meet the needs of her kids." The guardian ad litem testified that "I don't believe that [the parents are] in a position to parent their children at this time," and she supported termination.
Taking all of this evidence together, including the QEW's supporting testimony, we conclude that there was sufficient evidence for the district court to conclude that all of the ICWA and MIFPA statutory requirements for termination were satisfied. It thus was not clearly erroneous for the district court to terminate the mother's parental rights.
III.
We now turn to the father. CCSS argues that the evidence presented at trial was sufficient to show that continued custody of the children by their father would likely result in serious emotional or physical damage to his children. We disagree.
As discussed, ICWA and MIFPA require QEW testimony, and require that the QEW testimony support the court's determination that continued custody of the child by the parent would likely result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f) ; Minn. Stat. § 260.771, subd. 6(a). Here, this standard is not met.
*832 The QEW's affidavit addressing the parental rights of both parents stated that "[c]ontinued custody of the children by the parent(s) is likely to result in serious physical and/or emotional damage to the child." The QEW affirmed that affidavit by her testimony on direct examination. But on re-cross examination, the following exchange occurred between the QEW and the father's attorney:
Q: [D]id you have an opportunity to review the parental capacity evaluation as it relates to my client?
A: [The father], no, because [the mother] is the enrolled member, so I was looking more at [the mother]'s.
Q: So really your opinion has been directed at [the mother], is that accurate?
A: Because [the mother]'s the enrolled member.
Q: But my question, is that a fair question, is that accurate?
A: Yes.
Q: So with your expert testimony and your affidavit, my client wasn't really considered.... was he considered, honestly considered by you, when you prepared the affidavit?
A: When I prepared the affidavit, no, because [the mother]'s the enrolled member and [the mother]'s the one that I looked at more.
This exchange shows that the QEW's testimony spoke only to the mother's parental capacity, not to the father's. The QEW's testimony did not support the court's determination that continued custody of the children by the father would likely result in serious damage to the children. Plainly, a key element of the statutes-supporting testimony by the QEW-was not satisfied as to the father.[9] Because CCSS failed to satisfy its evidentiary burden, the district court erred in terminating the father's parental rights.[10]
Accordingly, we reverse the court of appeals and remand to the district court to dismiss the petition to the extent that it seeks to terminate the father's (O.A.K.'s) parental rights.[11] This dismissal shall be without prejudice, and CCSS remains free to bring a new petition at any time.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals in part, reverse in part, and remand to the district court for further proceedings.
Affirmed in part and reversed in part.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

The record does not establish who stabbed the mother, but at trial a CCSS child protection specialist testified that the father "was not there" when the stabbing occurred.

Three separate CHIPS petitions were filed. Two of the petitions, Case Nos. 14-JV-15-2605 and 14-JV-15-2606, related only to the mother's children-A.B. and M.G.B., respectively. The third petition, Case No. 14-JV-15-2604, related to the mother and the father's children, K.K. and L.B. Because A.K.K. was not born until September 2016, a separate order was issued placing A.K.K. in out-of-home care. In re the Welfare of the Children of: S.R.K. & O.A.K. , No. 14-JV-16-1365, Order at *1 (Clay Cty. Dist. Ct. Oct. 17, 2016).

The first permanency petition, Case No. 14-JV-16-1365, related to the parents' children-L.B., K.K., and A.K.K. The second and third petitions, Case Nos. 14-JV-16-1367 and 14-JV-16-1371, relate to the mother's children-M.G.B. and A.B., respectively.

Judge Jesson concurred specially, noting that "[s]cant attention was given ... during trial" to ICWA's and MIFPA's requirement of "proof beyond a reasonable doubt that returning the children to the parent will likely result in serious emotional or physical harm." Id. at *4 (Jesson, J., concurring specially). Nevertheless, Judge Jesson concurred because "when we dive deep into the record we see children who suffered serious emotional damage with no realistic path to a different future with their parents," and "the tribe supports termination of parental rights." Id.

MIFPA defines "qualified expert witness" as: "[A]n individual who (1) has specific knowledge of the Indian child's tribe's culture and customs, or meets the criteria in [Minn. Stat. § 260.771, subd. 6(d) ], and (2) provides testimony as required by [25 U.S.C. § 1912 ] regarding out-of-home placement or termination of parental rights relating to an Indian child." Minn. Stat. § 260.755, subd. 17a (2016). MIFPA requires that the QEW be tribe-designated, unless a party shows by clear-and-convincing evidence that, despite diligent efforts, the party was unable to get testimony from a tribe-designated QEW. Minn. Stat. § 260.771, subd. 6(b)-(d). In such cases, QEW testimony may be heard from, in descending order of preference, three classes of experts. Id. , subd. 6(d). Thus, a "qualified expert witness" is legally distinct from a Rule 702 expert witness. See Minn. R. Evid. 702.

Although there are slight differences in the ICWA and MIFPA provisions, these differences are not substantive. We thus focus on the meaning of 25 U.S.C. § 1912(f), but our analysis should be read as interpreting both 25 U.S.C. § 1912(f) and the relevant portion of Minn. Stat. § 260.771, subd. 6(a).

ICWA does not define "qualified expert witness," but a federal regulation does:
A qualified expert witness must be qualified to testify regarding whether the child's continued custody by the parent ... is likely to result in serious emotional or physical damage to the child and should be qualified to testify as to the prevailing social and cultural standards of the Indian child's Tribe. A person may be designated by the Indian child's Tribe as being qualified to testify to the prevailing social and cultural standards of the Indian child's Tribe.
25 C.F.R. § 23.122 (2016).

See Marcia V. , 201 P.3d at 508 ("The expert testimony constitutes some of the evidence upon which the judge bases [the 'serious risk'] finding. But it does not need to be the sole basis for that finding; it simply must support it."); Brenda O. v. Ariz. Dep't of Econ. Sec. , 226 Ariz. 137, 244 P.3d 574, 579 (Ariz. Ct. App. 2010) ("We conclude that [the qualified expert witness]'s testimony and the other evidence ... amply satisfied ICWA's requirements. In sum, the evidence before the court constituted a sufficient basis for its finding that returning the children ... 'is likely to result in serious emotional or physical damage to the child[ren].' " (citation omitted) ); In re M.F. , 225 P.3d at 1186 ("[T]he expert's opinion must support the ultimate finding of the district court that continued custody by the parent will result in serious emotional or physical damage to the child."); In re Payne/Pumphrey/Fortson , 311 Mich.App. 49, 874 N.W.2d 205, 212 n.2 (2015) ("[A] plain reading of the language of the applicable provisions in ICWA ... persuades us that expert testimony is required to support a finding that a parent's continued custody would likely result in serious emotional or physical damage to an Indian child."); Interest of K.S.D. , 904 N.W.2d 479, 485 (N.D. 2017) ("[F]ederal law requires testimony by a qualified expert witness about whether the continued custody of the child ... is likely to result in serious emotional or physical damage to the child."); In re IW , No. 115997, 419 P.3d 362, 365-66, 2017 WL 7048813, at *3 (Okla. Civ. App. Dec. 29, 2017) ("The expert testimony need not be the sole basis for [the] finding ... but the expert's testimony must support that finding ."); In re the Termination of Parental Rights to Vaughn R. , 320 Wis.2d 652, 770 N.W.2d 795, 805 (Wis. Ct. App. 2009) ("[Section 1912(f) ] requires that the prescribed determination of likely serious emotional or physical damage to the child must be supported by 'testimony of qualified expert witnesses.' ").

At oral argument, counsel for CCSS more or less conceded this point. When asked whether the father's qualifications as a parent were not considered by the tribe or the QEW, counsel replied: "I think that's a way you could put it, yes."

At oral argument CCSS confirmed that it was not arguing that any error was harmless. Accordingly, we do not reach the question of whether harmless-error analysis could ever apply to a termination of parental rights in the context presented here.

The petition that seeks termination of the parental rights of both parents-to K.K., L.B., and A.K.K.-is 14-JV-15-2604. The underlying CHIPS adjudications are not before us.