NOT DESIGNATED FOR PUBLICATION

No. 123,745

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of D.H. JR.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Meade District Court; ANDREW STEIN, judge. Opinion filed December 23, 2021. Reversed and remanded with directions.

*Chay Howard*, of Greensburg, for appellant natural mother.

*Clay A. Kuhns*, county attorney, for appellee.

Before BRUNS, P.J., HURST, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: This case, which involves the application of the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et seq. (2018), has a long and tortured history, which we need to describe in some detail in order to provide context for the ongoing issue throughout these proceedings. After several trips to our appellate courts, we once again confront the question whether on remand from this court, the district court erred in finding that notices to certain Indian tribes were sufficient to comply with the ICWA so as to enable the district court to determine whether the child, who is the subject of proceedings to terminate parental rights, is an Indian child.

R.H. is the natural mother (Mother) of D.H. Jr., (Child), who was born in November 2012. It is Mother's appeal that brings this matter to us. D.H., the Child's father, has not appealed.

In 2014, when the Child was two years of age, the State initiated Child in Need of Care (CINC) proceedings in the district court based on the parents' persistent use of illegal drugs that interfered with their parenting of the Child. The Child was placed in the protective custody of Saint Francis Community Services, and ultimately in the custody of S.H., the Child's paternal grandmother (Grandmother). At the time of the initial custody hearing, the parents were confined in the Meade County jail without bond.

Shortly after the commencement of these proceedings, Grandmother submitted an affidavit stating that while she was not enrolled as a member of a federally recognized Indian tribe, the Child was eligible for enrollment. She identified the tribe "with which the child may be associated" as the Cherokee tribe.

Thereafter, the State sent a form notice of the proceedings to the Cherokee Nation in Tahlequah, Oklahoma and to the Bureau of Indian Affairs area director in Anadarko, Oklahoma. The notice gave information on the Child and the Child's parents. The State's form of notice also provided space to identify the Child's maternal and paternal grandparents and great-grandparents. The only information provided in this space was the name and address of Grandmother. The comments section of the form alerted the State that "[o]nce a court is faced with evidence that the child is an Indian child, the court is bound to apply ICWA and to comply with its requirements. *In re S.M.H*., 33 Kan. App. 2d 424, 103 P.3d 976 (2005)."

The Cherokee Nation responded that none of the persons named in the notice was an enrolled member of the tribe. These persons consisted only of the Child's parent and Grandmother, whose birthdate was unknown. The Cherokee Nation stated that it needed full information about the Child's direct biological lineage to determine if he was eligible

for tribal membership. It stated: "It is impossible for Cherokee Nation to confirm or deny a claim of 'eligible for enrollment' without this information."

The court adjudicated the Child as a CINC after both parents decided not to contest and stipulated to the State's claims.

*2016*

On the State's motion, and following a termination hearing, the district court terminated the parents' parental rights. The State's motion had provided some of the Child's biological information, including the name and address of the maternal grandmother. Both parents appealed. Mother asked the Court of Appeals to remand the case pursuant to *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986), to determine if she had been denied the effective assistance of counsel. Our court granted the motion, and the case was remanded for a *Van Cleave* hearing.

On remand, the district court conducted an evidentiary hearing at which Mother contended that her counsel had advised her that she should not pursue the issue of whether the Child had Indian heritage because the tribe would come and take the Child away. Following the evidentiary hearing, the district court found that the performance of Mother's counsel had been below the reasonable attorney standard, but that his deficient performance was harmless. The district court also found that adequate information had been provided to meet the requirements for ICWA notification.

*2017*

The case was returned to the Kansas Court of Appeals, where the court considered the appeal of the district court's termination of parental rights. *In re D.H.*, 54 Kan. App. 2d 486, 401 P.3d 163, *rev. denied* 307 Kan. 987 (2017). The court found sufficient

3

evidence to support the district court's finding that the Child's parents were unfit and that their parental rights should be terminated. The court then addressed the adequacy of the information about the Child's paternal side in the ICWA notice, but not the lack of information about the Child's maternal side. This was because the issue on appeal was Mother's contention that the ICWA notice was deficient because it omitted the birthdate and maiden name of Grandmother, which the Cherokee Nation had noted in its response to the notice. But in addressing the notice requirement under the ICWA, this court noted that, to the extent known, the notice must include:

> "'All names known, and the current and former addresses of the Indian child's biological mother, biological father, maternal and paternal grandparents and great grandparents or Indian custodians, including maiden, married and former names or aliases; birthdates; places of birth and death; tribal enrollment numbers, and/or other identifying information.'" 54 Kan. App. 2d at 502.

See 25 C.F.R. § 23.11(d)(3) (2014). In addressing Mother's claim, this court found that the State made no effort to supply the Cherokee Nation with the missing information about the Child's Grandmother, even though the information was readily available because the Child was living with Grandmother during the pendency of these proceedings. The court concluded: "The court must consider this child to be an Indian child until the Cherokee Nation rules that he is not." 54 Kan. App. 2d at 503.

The case was remanded to the district court in order for the State to provide further information to the Cherokee Nation to determine if the Child could be enrolled in the tribe. The appellate court concluded that if the district court finds that the Child is an Indian child, the district court must set aside its decision terminating parental rights and proceed further under the ICWA. 54 Kan. App. 2d at 504.

4

The district court held its second remand hearing in February 2018. The State provided a revised notice to the Cherokee Nation and the tribe's response to the notice. The court asked whether there was a possibility that "any other Indian tribe or nation . . . was suspected as being the ancestral or the tribe of heritage" for the Child. Mother's counsel responded that Mother "believes she may have some Indian heritage. She's in the process of communicating with her family to determine the nature of that." The court responded:

> "Counsel, I'm not aware of whether that could even be asserted if it was not prior to the appeal. And, it appears that the only issue in the remand instructions from the Court of Appeals was regarding the notice to the Cherokee Nation. So, it does not appear that the Court would have authority to entertain assertions of relation-hood or relationship with another nation.
>
> . . . .
>
> ". . . [T]he Court will not entertain assertions of any other Indian tribe as being the tribe to consider for the Indian Child Welfare Act."

The State's counsel argued that the amended notice was sufficient and satisfied the mandate of the Court of Appeals. The State contended that as a result of the Court of Appeals ruling, the only missing information was information regarding the paternal grandmother. The State argued:

> "I agree that in certain cases, that the Court of Appeals could have asked for more information to be sent to the tribe. They did not specifically in this one, and that was the basis for the remand. So, I do not believe it would be proper, at this point in time, to now require the State to have a larger notification than what the Court of Appeals was basing their opinion on."

Mother's counsel responded:

> "While I would concede that the most egregious errors were the question marked areas, it does not make the notice inherently proper per what the Court of Appeals is requesting just because it has what had question marks now. It still lacks what the C.F.R., which is cited by the Court of appeals as that is required."

The district court found that the additional information initially requested by the Cherokee Nation related to the Child's Grandmother, and the notice provided that information. The district court concluded that the mandate from the Court of Appeals had been satisfied.

Once again Mother appealed. The State and the Child's Grandmother, who was an interested party in the case, moved the Court of Appeals to dismiss the appeal for lack of jurisdiction. The Court of Appeals granted the motion. Our Supreme Court took up the matter for review and reversed the Court of Appeals and remanded for the Court of Appeals to consider Mother's appeal. *In re D.H.*, No. 119,156 (order filed September 14, 2018). On remand to the Court of Appeals, Mother submitted her appellate brief in which she noted the requirements of 25 C.F.R. § 23.11(d)(3) (2014) that included information on the Child's maternal lineage. She contended that following the initial appeal of this case, "while the State cured the most egregious error in failing to respond to the Cherokee Nation's request for additional information, the notice remains deficient without the paternal great-grandparent's relevant information."

*2019*

Upon considering the matter after remand, the Court of Appeals again focused on the information regarding the Child's paternal side, which was the object of Mother's current appeal. This court again cited the requirement that the notice include:

> "'All names known, and the current and former addresses of the Indian child's biological
> mother, biological father, maternal and paternal grandparents *and great grandparents* or
> Indian custodians, including maiden, marred and former names or aliases; birthdates;
> places of birth and death; tribal enrollment numbers, and/or other identifying information.
> '" *In re D.H.*, No. 119,156, 2019 WL 1495698, at *3 (Kan. App. 2019) (unpublished
> opinion).

The court noted the State's lack of effort in complying with these requirements with respect to the paternal great-grandparents: "Grandmother's continued participation in the case suggests little would have been required to make inquiry through her for information about her own parents." 2019 WL 1495698, at *3.

The State argued that the omission of great-grandparent information was harmless. The court found this argument to have been waived because the State failed "to pair that argument with supporting authority and neither this court nor our Supreme Court has applied a harmless error analysis to this federal notice requirement." 2019 WL 1495698, at *3.

The court also rejected the State's contention that the court should consider "'child's time'" in resolving this case. 2019 WL 1495698, at *4. Citing the notice requirements under the ICWA, the court stated: "We are aware of the need for all cases under the Code to be resolved as promptly as possible, consistent with the law. That consideration, however, does not give this court license to declare a case concluded when an issue remains unresolved." 2019 WL 1495698, at *4.

The court remanded the case to the district court to

> "fully comply with the notice requirements under the Act as they applied at the outset of
> the case. If the Cherokee Nation again determines D.H. is not an Indian child, no further
> action is required. This court has already affirmed the termination of parental rights. If in

response to the revised notice D.H. should be found to be an Indian child, the district court must set aside the termination order and proceed in compliance with the Act." 2019 WL 1495698, at *4.

*2020*

On remand, the State sent revised notices to the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians. The revised notice contained information regarding the paternal branch of the Child lineage back to the great-grandparents, but no information about the Child's maternal line. None of the tribes identified the Child as an Indian child. Addressing the attorney for the State, the district court asked: "And, just so I'm clear, I have read the Opinion and the Mandate. My understanding that the sole deficiency this go round was the failure to provide the names of the great grandparents to the tribes for them to consider; is that correct?" The State's attorney responded, "That's my understanding, Your Honor."

Mother's counsel responded: "Your Honor, I believe it would be the position of the mother that for notice to be sufficient under this (inaudible) provide all information relevant to those determinations. Of course, it's decided in the Opinion was the omission of the great grandparents' information, Your Honor."

Mother's counsel requested a continuance so Mother could speak to her family to determine the nature of her Indian heritage. The district court declined to continue the proceedings. Mother's counsel further objected to the adequacy of the ICWA notice because it provided information only about the paternal side of the Child's heritage and because the notice was not sent to the Bureau of Indian Affairs. The district court disagreed and concluded the notices complied with ICWA, thereby foreclosing any further challenge to the order terminating parental rights.

8

Mother has again appealed to this court.

ANALYSIS

*Jurisdiction*

As a preliminary matter, the State contends this court lacks jurisdiction to consider Mother's appeal because it does not arise from an order of temporary custody or from an adjudication, disposition, or finding of unfitness or termination of parental rights. The existence of appellate jurisdiction is a question of law over which we have an unlimited review. See *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

The same jurisdictional issue was raised earlier in these proceedings and to no avail. In reversing the Court of Appeals' dismissal of Mother's appeal for lack of jurisdiction, our Supreme Court stated:

> "We find the Court of Appeals erred in determining it lacked jurisdiction to hear this appeal. The Court of Appeals' prior remand order directed that if the district court determined D.H. Jr. was not an Indian child, the district court could 'reaffirm its prior decision terminating parental rights.' *In re D.H.*, 54 Kan. App. 2d 486, 504, 401 P.3d 163, *rev. denied* 307 Kan. 987 (2017). The district court's finding on remand that the second notice of proceedings provided to the Cherokee Nation was appropriate and its determination that D.H. Jr. was not an Indian child resulted in the district court's reaffirmation of the termination of Appellant's parental rights. An order terminating parental rights is appealable. K.S.A. 2017 Supp. 38-2273(a)." *In re. D.H.*, No. 119,156 (order filed September 14, 2018).

We have jurisdiction to consider this appeal.

9

*Compliance with the Mandate*

Because this appeal arises from the district court's judgment after a remand from the appellate court, our task is to determine whether the district court complied with the mandate to affect proper ICWA notice by requiring that proper notice be sent to determine whether the Child is an Indian child.

As noted earlier, in its most recent remand to the district court, this court cited the notice requirements found in the pertinent federal regulations and directed the State to fully comply with the notice requirements under the ICWA. The court stated:

> "We conclude the case must again be remanded to the district court, and the State must fully comply with the notice requirements under the Act as they applied at the outset of the case. If the Cherokee Nation again determines D.H. is not an Indian child, no further action is required. This court has already affirmed the termination of parental rights. If in response to the revised notice D.H. should be found to be an Indian child, the district court must set aside the termination order and proceed in compliance with the Act." *In re D.H.*, 2019 WL 1495698, at *4.

Mother contends that the State's most recent attempt to provide notice to the Indian tribes of the termination proceedings is still deficient.

*Failure to Full Comply with the ICWA Notice Requirements*

Application of the ICWA raises questions of law over which we exercise unlimited review. *In re A.J.S.*, 288 Kan. 429, 431, 204 P.3d 543 (2009); *In re D.H.*, 54 Kan. App. 2d at 501-02.

Involuntary child custody proceedings in Kansas are governed by the Revised Kansas Code for Care of Children, K.S.A. 2020 Supp. 38-2201 et seq. But when a court

10

knows or has reason to know that an Indian child is involved, the court must comply with the ICWA. K.S.A. 2020 Supp. 38-2203(a). An Indian child within the meaning of the ICWA is an unmarried person under the age of 18 who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child for a member of an Indian tribe. 25 U.S.C. § 1903(4) (2018). If the evidence suggests the court is dealing with an Indian child, the court must consider the child to be an Indian child until the tribe advises otherwise. A tribe's determination of membership or membership eligibility is conclusive and final. *In re S.M.H*, 33 Kan. App. 2d 424, 428, 103 P.3d 976 (2005)

The ICWA requires specific notice of the proceedings to the applicable Indian nations or tribes or to the Bureau of Indian Affairs so that an interested nation or tribe may intervene in the proceedings. A tribal court has concurrent jurisdiction with state courts over involuntary child custody proceedings involving children not domiciled on a reservation. 25 U.S.C. § 1911(a) (2018); *In re M.F.*, 290 Kan. 142, 149, 225 P.3d 1177 (2010).

Certain ICWA regulations adopted in 2014 were amended in 2016. But under 25 C.F.R. § 23.143, the relevant 2016 amendments do not apply to proceedings to terminate parental rights that were initiated before December 12, 2016. Here, the termination proceedings began before that date, so the 2014 regulations were still in effect and control. According to 25 C.F.R. § 23.11(d) (2014), the federal regulation governing the ICWA notice applicable when the State first had notice of the Child's possible Cherokee heritage, the notice must contain as much of the following information as is known or reasonably ascertainable:

> "(1) Name of the Indian child, the child's birthdate and birthplace.
> "(2) Name of the Indian tribe(s) in which the child is enrolled or may be eligible for enrollment.

11

"(3) All names known, and current and former addresses of the Indian child's biological mother, biological father, *maternal and paternal grandparents and great grandparents* or Indian custodians, including maiden, married and former names or aliases; birthdates; places of birth and death; tribal enrollment numbers, and/or other identifying information.

"(4) A copy of the petition, complaint or other document by which the proceeding was initiated." (Emphasis added.)

Based on a plain reading of 25 C.F.R. § 23.11(d) (2014), the State's notice after the most recent remand did not fully comply with the requirements of the ICWA and therefore did not comply with this court's mandate.

In an effort to comply with the mandate, the State provided additional information about the Child's paternal lineage but none about the Child's maternal lineage. The regulation required information about the names and addresses of the Child's biological mother and father and of the child's *maternal* and paternal grandparents and great-grandparents. The notice provided by the State included information about the Child's *paternal* grandmother, great-grandparents, great-great-grandparents, and great-great-great-grandparents, but none about the Child's maternal side other than Mother's name and birthdate.

The State is required only to provide known ancestral information. But the State is required to exercise reasonable efforts to obtain that information. See *In re M.J.*, 266 P.3d 850, 861 n.10 (Utah App. 2011). Here, the record does not disclose that the State or any of its social service agencies sought to obtain information about Mother's lineage from Mother or from any other source.

Nothing in the language of 25 C.F.R. § 23.11(d) suggests that information in the notice about a child's lineage is limited to the side of his or her family claiming Indian heritage. See *In re J.M.*, 206 Cal. App. 4th 375, 380, 141 Cal. Rptr. 3d 738 (2012). In fact, as noted above, the regulation specifically requires ancestral information from both

12

sides of the Child's family. This court's prior mandate required the State to "fully comply with the notice requirements under the Act as they applied at the outset of the case." *D.H.*, 2019 WL 1495698, at *4. At the outset of the case the district court had the affidavit from the Child's paternal grandmother stating that her grandson, the Child, was eligible for enrollment in what she thought was the Cherokee tribe. That triggered the notice requirements under the Act which included the disclosure of ancestral information on both sides of the Child's family.

Because the notice was deficient by omitting Mother's side of the Child's lineage, the case must once again be remanded to the district court for compliance with ICWA notice requirements. On remand, the State must exercise reasonable diligence in seeking out information regarding the maternal side of the Child's lineage as called for in 25 C.F.R. § 23.11(d). It would be wise for the State to document on the record its efforts in doing so in order to minimize the chance for further appeals.

In accordance with 25 C.F.R. § 23.11(a), and as it did before, the State must then provide a notice to the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians, and the Cherokee Nation in Oklahoma, which includes all reasonably ascertainable information regarding the Child's maternal lineage. Moreover, the State must also comply with the regulation's requirement that "[c]opies of these notices shall be sent to the Secretary and the appropriate Regional Director." 25 C.F.R. § 23.11(a) (2014).

Nevertheless, the search for the Child's possible Indian heritage need not extend beyond the Cherokee tribes based on Mother's belated contention in 2018 that she "believes she *may have* some Indian heritage. She's in the process of communicating with her family to determine the nature of that." (Emphasis added.) Mother apparently took no steps during the two years before the next hearing in 2020 to determine if she, in fact, had Indian heritage and whether she was eligible for membership in some tribe other than the Cherokee. A mere possibility of having an Indian heritage is not sufficient to expand the

13

inquiry into the Child's lineage beyond the inquiry currently under way. Cf. *In re J.L.*, 10 Cal. App. 5th 913, 922-23, 217 Cal. Rptr. 3d 201 (2017).

The district court had already engaged in the process of determining whether the Child was an Indian child. That process was incomplete because of the State's failure to notify the tribes of the Child's maternal lineage. We have addressed that failure and are remanding the case in order to cure it. But Mother contends that the scope of the inquiry should extend to tribes other than the Cherokee tribe identified in the Child's paternal grandmother's affidavit. Thus, she contends, the notice must also be sent to the Bureau of Indian Affairs.

The role of the Bureau under the ICWA is to identify the correct tribal affiliation of a purported Indian child when the affiliation of the child is unknown and to pass that notice on to the proper tribal authorities for them to consider the claim that the child is eligible for membership in the tribe. See 25 U.S.C. § 1912(a). While copies of the notice should be sent to the Bureau under federal regulations, the requirement is a mere technicality if there is no evidence of other Indian tribes. This is because the only purpose of providing a copy to the Bureau is to provide a discovery tool for ascertaining the tribal affiliation when Indian heritage is unknown. Here, Mother is not certain of tribal affiliation, but no other suspected tribal affiliation has been advanced other than the Cherokee tribe. Consequently, if the Bureau had been provided a copy of the ICWA notice containing the same information provided to the Cherokee tribes, it is unlikely that the Bureau would have responded differently. Nevertheless, because we are remanding the case for full ICWA compliance, the State must follow the clear language of 25 C.F.R. § 23.11(a) (2014) and provide a copy of the notice to the Secretary and the Regional Director.

So far Mother has not shown a reasonable probability that notice to the Bureau would have produced a tribal affiliation other than with one of the three Cherokee tribes

14

already provided with notice. If Mother had determined that the Child was eligible for membership in some other tribe, she could have so informed the district court at any time or she could have informed us even while the case has been on appeal. See *In re M.B.*, 39 Kan. App. 2d 31, 176 P.3d 977 (2008). But she has not. Based on the record before us, there is no basis for extending the inquiry into the Child's Indian heritage beyond the tribes of the Cherokee Nation.

Reversed and remanded with directions.